UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED
JAN 3 0 2017
CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY

KIRK MCCLELLAND and )
TAMRE MCCLELLAND, )
)
)
Plaintiffs, )
)
v. ) Case No: 5:16-cv-00108
)
CHUBB LLOYD'S INSURANCE )
COMPANY OF TEXAS, and )
ROBERT LYNN PRITCHARD, )
)
Defendants. )

## MEMORANDUM OPINION

### I.  INTRODUCTION

This case is a dispute over insurance policy coverage and the conduct of the defendant insurer, Chubb Lloyd's Insurance Company of Texas (Chubb Lloyd's), in its payments to the plaintiff insureds, Kirk and Tamre McClelland for a covered loss. The McClellands asserted various causes of action against Chubb Lloyd's and claims adjuster Robert Pritchard: breach of contract, violations of Sections 541 and 542 of the Texas Insurance Code, violations of the Texas Deceptive Trade Practices Act (DTPA), unfair insurance practices, and breach of the duty of good faith and fair dealing. On November 1, 2016, Chubb Lloyd's moved for summary judgment as to those claims. The Court now considers defendant's Motion [ECF No. 37], plaintiffs' Response [ECF No. 38], and defendant's Reply [ECF No. 39].

### II.  BACKGROUND

On September 8, 2014, the McClellands' garage apartment at 502 Arcadia Place, San Antonio Texas was destroyed in a fire. The McClellands were policyholders of a Chubb Lloyd's "Texas

1

Standard Homeowners Policy" covering that unit. Mot. Ex. 1 [ECF No. 37-1] pp. App. 1, 11. Under the Standard Policy, the limit of liability for covered losses to dwellings or other structures was "replacement cost settlement" subject to certain limitations and deductions for deprecation. However, in addition to the Texas Standard Homeowners Policy, the McClellands also purchased a "Texas Platinum Homeowner's Endorsement." *Id.* at p. App. 32. The Platinum Endorsement amended the Standard Policy, augmenting the coverage limits and providing additional protections against covered losses. *Id.* One such addition extended the limit on liability for covered losses to "reconstruction cost even if this amount exceeds the limit of liability for your dwelling or other structures as shown on the declarations page." Mot Ex. 1, pp. 46. The Platinum Endorsement also defined "reconstruction cost":

> **"Reconstruction cost"** means the amount required at the time of loss to repair, replace, or rebuild, whichever is less, at the same location, your dwelling or other structure, using like design, and the quality of materials and workmanship which existed at the time of the loss.
>
> **"Reconstruction cost"** does not include any amount required for:
>
> a. the excavation, replacement or stabilization of land under or around your dwelling or any other structure;
>
> b. conforming to any law or ordinance that regulates the repair, replacement, rebuilding or demolition of your dwelling or any other structure; or
>
> c. removing the debris of a covered loss or the property that caused a covered loss.

Mot. Ex. 1, pp. App. 47.

On September 8, 2014, the same day as the fire, the McClellands filed a claim for damage to the property. Mot. 2. According to Kirk McClelland, Truax Construction submitted an estimate for the cost of repair at $211,450.00, excluding the cost of the slab, demolition, and haul-off. Affidavit of Kirk McClelland [ECF No. 38-1] 2. Viewed in the light most favorable to plaintiffs,

Chubb Lloyd's rejected that estimate in favor of their own estimate. *Id.* According to the evidence presented, Chubb Lloyd's paid out $213,527.37 on the claim:

- Rebuild estimate            $106,156.84
- Slab removal              $5,500.00
- Survey                    $1,500.00
- Survey                    $363.38
- Slab replacement           $33,633.88
- Emergency board up expenses   $1,341.33
- Garage and Apartment Contents   $65,031.94

Mot. Ex. 1, p. App. 57. While the survey and board up expenses were paid to a third party contractor, all other payments were directed to the McClellands. *Id.* "McClelland directly received $145,290.72, towards the rebuild of the structure." Pls.' Resp. [ECF No. 38] 3.

In contrast, the McClellands have spent $349,402.55 to rebuild the structure. Affidavit of Kirk McClelland 2. During the rebuild, the McClellands increased the size of the dwelling from 1,204 square feet to 1,584 square feet, an increase of more than 30%. Affidavit of Kirk McClelland 2. However, the McClellands claim that the increase in square footage "is not the basis for the large difference in cost of repair that [they] have incurred." *Id; see also* Pls. Resp. 5 ("[T]his increase in size does not account for the large difference in actual cost to repair and Defendant's estimated cost.").

The McClellands filed suit, claiming "Defendant Chubb [Lloyd's] failed to perform its contractual duty to adequately compensate Plaintiffs under the terms of the Policy." Am. Compl. [ECF No. 6] 3. According to the McClellands, Chubb Lloyd's failed to pay the full proceeds under the Policy in breach of the insurance contract. *Id.* Further, plaintiffs alleged Chubb Lloyd's violated various portions of the Texas Insurance Code:

(1) by making misrepresentations that covered damages to the property were not covered in violation of TEX. INS. CODE §§ 541.051, 541.060, and 541.061;

3

(2) by failing to settle claims in a fair matter in violation of TEX. INS. CODE § 541.060(2);

(3) by failing to promptly provide a reasonable explanation of the basis of the policy for denial of the claim in violation of TEX. INS. CODE § 541.060(3);

(4) by failing to affirm or deny coverage within a reasonable time in violation TEX. INS. CODE § 541.060(4);

(5) by refusing to fully compensate plaintiffs under the terms of the policy in violation of TEX. INS. CODE § 541.060(7);

(6) by failing to acknowledge plaintiffs' claim, begin investigation or request all information reasonably necessary to investigate plaintiffs' claim within fifteen days in violation of TEX. INS. CODE § 542.055

(7) by failing to accept or deny the claim within fifteen days in violation of TEX. INS. CODE §542.056;

(8) by delaying full payment in violation of TEX. INS. CODE § 542.055; and

(9) by refusing to pay with no good faith basis to deny full payment in violation of the common law duty of good faith and fair dealing.

*Id.* at 3-11. The McClellands also alleged the above violations of the Insurance Code as actionable under the DTPA. *Id.* at 7.

Chubb Lloyd's removed the action on January 29, 2016. Notice of Removal, ECF No. 1. On September 30, 2016, this Court dismissed claims against defendant Pritchard, a claims adjuster for Chubb Lloyd's, on the basis that he was improperly joined. ECF No. 34. On November 1, 2016, Chubb Lloyd's moved for summary judgment as to the breach of contract claim, arguing that plaintiffs "have no evidence Chubb [Lloyd's] failed to pay what was required by the policy." Mot.

1. Specifically, Chubb Lloyd's points to an absence of evidence as to two essential elements of a breach of contract action: breach and damages. Further, Chubb Lloyd's argues that "[b]ecause Plaintiffs' contractual claim fails, all of Plaintiffs' extra-contractual claims predicated on the claim handling also fail." *Id.* at 2. Chubb Lloyd's also points to an absence of evidence as to two essential elements—causation and damages—of the extra-contractual claims (violation of the Insurance Code, DTPA, and common law breach of good faith and fair dealing claims). *See id.* at 5 ("Plaintiffs have no evidence a breach of any duty by Chubb [Lloyd's] caused Plaintiffs to suffer any damage beyond contractual damages."). Thus, according to Chubb Lloyd's, even if evidence exists as to contractual damages, that evidence does not raise an issue of material fact as to the extra-contractual claims

The McClellands respond that it has evidence that additional monies are owed under the policy which has not been paid. To support this claim, the McClellands point to witnesses that may testify as to the repair of the property, as well as an Affidavit from Kirk McClelland and billing invoices from Truax Construction, the McClellands' contractor. Pls.' Resp. 5; *see also* Ex. A.

### III.   LEGAL STANDARD

Under the rules of civil procedure, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party's summary judgment burden depends on whether they have the burden of proof at trial on the particular claims or defense to which the motion is addressed. A party who does not have the burden of proof at trial can meet its summary judgment obligation by pointing the court to the absence of evidence to support a claim or defense. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once it does so, the nonmovant must go

beyond the pleadings and designate specific facts showing a genuine issue of material fact. *Id.* at 324; Fed. R. Civ. P. 56(c)(1)(B).

A fact is material if it could affect the outcome of a case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the party with the burden of proof. *Id.* at 248. Summary judgment is mandatory if the party with the burden of proof fails to produce evidence as to any essential element. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). Parties may assert such facts by presenting evidence in the record "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). In determining whether a genuine dispute of material fact exists, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. However, the mere existence of a scintilla of evidence is insufficient to raise a genuine issue of material fact. *Id.* at 251.

**IV.   ANALYSIS**

As plaintiffs, the McClellands have the burden at trial of proving their claims for breach of contract and the extra-contractual claims for violations of the duty of good faith and fair dealing, the Insurance Code, and the DTPA. Therefore, Chubb Lloyd's can meet its summary judgment burden by pointing to the absence of evidence to support those claims. *Celotex*, 477 U.S. at 325. Here, Chubb Lloyd's has asserted an absence of evidence as to both the contractual or extra-contractual claims. The Court will consider them separately.

### A. The Summary Judgment Evidence

The McClellands point to the insurance policy submitted with defendant's motion. Mot. Ex. 1 [ECF No. 37-1]. They also point to testimony by Kirk McClelland. In an affidavit attached to the Response, McClelland asserts that defendants incorrectly estimated the rebuild at $106,156.84. Affidavit of Kirk McClelland 1. The McClellands have also attached Truax Construction's original estimate for the cost of repair at $211,450.00.

## TRUAX CONSTRUCTION
### INCORPORATED

McClelland Residence
502 Arcadia Place
SA TX 78209

Truax Construction Inc. proposes to furnish labor and materials for the following garage/guest quarters replacement due to complete fire loss

1. Due to City of Terrell Hills codes existing foundation will need to be removed and replaced to meet minimum building requirements. All construction will need to be engineered for city to approve
2. Main power/utility lines will need to be totally replaced and reran in conduits under ground. Sprinkler system controls will need to be replaced. Water supply from house and sewer lines will need to be replaced with new foundation
3. Existing windows were Pella wood matching existing house. Doors were solid panel wood doors. Siding was 12" custom yellow pine105 drop siding

Standard replacement cost/construction cost follows:

| | |
|---|---:|
| - Conditioned space 452 sf @ 250 | 113,000.00 |
| - Unconditioned space 556 @ 150 | 83,400.00 |
| - Covered Patio 196 sf @ 50 | 9,800.00 |
| - Utilities | 4,500.00 |
| - Sprinkler Controls | 750.00 |
| | 211,450.00 |

4. Estimate does not include demo and haul off of damaged building

Pls.' Resp. Ex. 2, ECF No. 38-2. According to Mr. McClelland, that estimate was rejected, and the McClellands received only payment of $106,156.84, and payments for the removal and replacement of the property's slab:

> Defendant's representatives created an estimate which estimated that our property could be completely rebuilt for $106,156.84. Defendant Chubb paid this estimated amount even though my wife and I informed Defendant that items in the estimate were incorrect. Our contractor Truax Construction submitted an estimate to Defendant Chubb, estimating the cost of repair, excluding the cost of the slab, demolition, and haul-off to be $211,450.00. Our contractors estimate was rejected and we have received no additional payments towards the reconstruction of our

7

property with the exception of a payment for the removal and replacement of the property's slab.

Affidavit of Kirk McClelland 1-2. McClelland claims to have spent $349,402.55 to rebuild the structure, though they admit increasing the size from 1,204 square feet to 1,584. *Id.* The invoices detailing the McClellands expenses are also attached. The Court will consider whether this evidence raises a genuine issue of material fact as to either the contractual or extra-contractual claims.

Plaintiffs claim to have identified "multiple witnesses whom have information as to the cost, method, and scope of repair required at the property," that the "amount of repair incurred may be testified to by Kirk or Tamre McClelland," and the "necessity, cost, and method of repair can be testified to by Plaintiffs' contractor Jeff Truax." Pls.' Resp. 5. However, Rule 56 requires assertions of material facts to be supported by evidence in the record, such as sworn testimony or other admissible evidence. *See* Fed. R. Civ. P. 56(c)(1)(B) & (c)(2). Witness lists are not evidence, and this Court cannot consider whether or how these potential witnesses *might* testify here. Accordingly, this Court only considers the summary judgment in the record here: the policy, the Affidavit of Kirk McClelland, and Truax Construction's invoices. According to plaintiffs, that evidence "constitutes clear evidence that Plaintiffs have incurred costs which have not been properly compensated by defendant Chubb." Pls.' Resp. 5. The Court assesses those claims below.

### B. Breach of Contract Claims

To prevail on a breach of contract claim in Texas, plaintiffs must prove (1) a valid and enforceable contract exists, (2) the plaintiff performed or tendered performance, (3) the defendant materially breached the contract, and (4) the plaintiff sustained damages due to the breach. *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001). Chubb Lloyd's moves for summary judgment dismissing the McClellands' claims for

8

breach of contract, arguing that the plaintiffs have asserted no evidence that Chubb Lloyd's failed to pay what was required by the policy. Mot. 1. In other words, that plaintiffs cannot raise a material fact as to elements 3 and 4. *See* Mot. 3 ("Plaintiffs cannot meet their burden to submit evidence raising a genuine issue of material fact that Chubb materially breached the Policy or that Plaintiffs suffered damages because of such breach.").

A breach occurs when a party fails to perform a duty required by the contract. *Hoover v. Gregory*, 835 S.W.2d 668, 677 (Tex. App.—Dallas 1992). The McClellands argue that Chubb Lloyd's was required to pay additional money under the insurance policy, and that Chubb Lloyd's failure to pay constitutes both breach and damages in the amount of roughly $243,245.71, the difference in what Chubb Lloyd's paid to the McClellands ($106,156.84) and what the McClellands paid to Truax Construction ($349,402.55). Pls. Resp. 4-5, 9.

But the scant evidence here would not enable a reasonably jury to find a material breach of the policy or resulting damages. The parties do not dispute whether or not the building was covered, and Chubb Lloyd's did not deny the McClellands' claim for a covered loss. Indeed, the evidence provided by <u>both</u> parties shows that the McClellands' home was covered by a Chubb Lloyd's policy, that the home burned down, and that that Chubb Lloyd's paid $106,156.84 to the McClellands to satisfy policy obligations. The only dispute is over the amount owed under the policy. That is, the McClellands argue that they were owed more than $106,156.84.

The policy covered loss valued at the cost of reconstruction, or "the amount required at the time of loss to repair, replace, or rebuild, whichever is less, at the same location, [the] dwelling or any other structure, using like design, and the quality of materials and workmanship which existed at the time of loss." Mot. Ex. 1, pp. App. 47. Therefore, assuming a rebuild was required, Chubb Lloyd's owed a duty to pay only the amount required to rebuild a dwelling of like design and

9

quality. Plaintiffs argue the amount required to rebuild a dwelling of like design and quality is more than $106,156.84 and point to their own expenses and a Truax Construction estimate as proof. But the expenses paid cannot be the proper amount for a dwelling of like design or quality; plaintiffs admit that the dwelling *is not* of like design or quality. *See* Affidavit of Kirk McClelland 2 (admitting that the rebuild increased the size of the dwelling by 380 square feet). The expenses required to rebuild a dwelling 30% larger than the one that was destroyed is not evidence that the $106,156.84 was insufficient. A reasonable jury could not look at those expenses and find that Chubb Lloyd's breached the policy by only paying $106,156.84.

Similarly, the Truax Construction estimate consists of a single page with a "standard replacement cost/construction cost" break down. But there is no evidence that the standard rates used by Truax Construction, such as the $250/sf rate for conditioned space, was the amount required to rebuild a dwelling of like design or quality as the one destroyed here. Similarly, the estimate contains no reference to the design, materials, or the quality of workmanship of either the original dwelling or the dwelling to be rebuilt. Further, plaintiffs have not submitted any testimony from Truax that he considered the design and quality of the dwelling at the time of loss, or that the estimate was intended to replace the dwelling as it existed at the time of loss. Simply put, there is no evidence that the Truax estimate is the amount required to rebuild a dwelling of like design or quality as it existed at the time of loss. A reasonable jury could not look at the Truax estimate and find that Chubb Lloyd's breached the policy by not paying $211,450.00.

The only remaining evidence that plaintiffs could point to for evidence of breach is the Affidavit of Kirk McClelland, which states:

> [T]he small increase in square footage is not the basis for the large difference in cost of repair that we have incurred. Defendant Chubb failed to pay the correct value of many aspects of our home, including windows, doors, appliances, building

materials and fixtures. To date, my wife and I have not received any additional payment for those items.

Affidavit of Kirk McClelland 2. But "[a]ffidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985). McClelland's conclusory statement that Chubb Lloyd's "failed to pay the correct value" is tantamount to an affidavit saying "defendant breached." Similarly, the conclusory statement that the increase in size "is not the basis for the large difference in cost of repair" is conclusory and without evidentiary support. McClelland's affidavit is insufficient to defeat a motion for summary judgment. No reasonable jury could look to this affidavit and find that Chubb Lloyd's breached the policy by paying $106,156.84.

In sum, the McClellands have submitted no evidence under which a reasonable jury could find that Chubb Lloyd's breached the policy. Accordingly, this Court finds there is no genuine issue of material fact as to breach, an essential element of breach of contract.[1] Therefore, this Court will grant summary judgment and dismiss the claims for breach of contract against Chubb Lloyd's.

### C. Extra-contractual Claims

Chubb Lloyd's also claims that, because the contractual claim fails, "all of Plaintiff's extra-contractual claims predicated on the claim handling also fail." Mot. 2. The Court assesses each extra-contractual claim separately below.

#### a. Breach of Good Faith and Fair Dealing Claims

Chubb Lloyd's also moved for summary judgment dismissing the McClellands' claims for violations of the common law duty of good faith and fair dealing. In Texas, insurers have a duty

---

[1] Because there is no evidence to raise a genuine issue of material fact as to breach, this Court finds it unnecessary to reach Chubb Lloyd's arguments asserting an absence of evidence to support damages regarding the contractual and extra-contractual claims.

to deal fairly and in good faith with an insured in processing and paying claims. *Arnold v. Nat'l County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987). An insurer breaches this duty by denying or delaying payments if the insurer knew or should have known it was reasonably clear the claim was covered. *JM Walker LLC v. Acadia Ins. Co.*, 356 Fed. Appx. 744, 747 (5th Cir. 2009). An insured must show that the insurer had no reasonable basis to deny or delay a claim. *Id.* Evidence of a bona fide coverage dispute does not rise to the level of bad faith. *Id.* In other words, insurers have a right to deny questionable claims without being subject to bad faith liability if the denial later is determined to be wrongful. So long as an insurer has a reasonable basis to deny or delay payment of a claim, the insurer is not liable for breach of the duty of good faith and fair dealing. *Lyons v. Millers Cas. Ins. Co. of Tex.*, 866 S.W.2d 597, 600 (Tex. 1993).

Chubb Lloyd's argues that "Plaintiffs cannot maintain a bad faith cause of action because there is no evidence Chubb's liability for the claim exceeds what it paid, *i.e.* Plaintiffs cannot show the claim decision was unreasonable." Mot. 5. In essence, Chubb Lloyd's argues that, if the McClellands' have no evidence that Chubb Lloyd's even breached the contract by declining the Truax estimate, they cannot present evidence that Chubb Lloyd's lacked a reasonable basis in declining the Truax estimate. This Court agrees. No reasonable jury could look to the evidence presented here and determine that Chubb Lloyd's lacked a reasonable basis to decline the Truax estimate. Accordingly, the court will grant summary judgment and dismiss the bad faith claims.

### b. Insurance Code Violations

Chubb Lloyd's also moves for summary judgment dismissing the McClellands' claims for violations of the Texas Insurance Code. The McClellands' claims are broadly plead, and include violations of both Chapter 541 and Chapter 542 of the Insurance Code. The Court will consider those claims separately.

### i. Chapter 541

Chubb Lloyd's similarly moved for summary judgment dismissing the McClellands' claims for violations of Texas Insurance Code §§ 541.051, 541.060, and 541.061, arguing that there is an absence of evidence that Chubb Lloyd's caused plaintiffs to suffer damages. Mot. 5. Under § 541.151, a person who sustains actual damages may bring a private right of action against another person for engaging in unfair methods of competition, or unfair or deceptive practices in the business of insurance. TEX. INS. CODE § 541.151. It is an unfair or deceptive act to misrepresent the terms or benefits promised under a policy. TEX. INS. CODE §541.051(1). It is also an unfair or deceptive act to misrepresent to a claimant a material fact or policy provision, § 541.060(1); to fail to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim "to which the insurer's liability has become reasonably clear," § 541.060(2); to promptly provide a reasonable explanation of the basis for the denial of a claim, § 541.060(3); to fail to affirm or deny coverage in a reasonable time, § 541.060(4); or to refusing to pay a claim without conducting a reasonable investigation, § 541.060(7).

To recover under § 541.151, plaintiffs must prove that the unfair or deceptive conduct caused actual damages. *See* TEX. INS. CODE § 541.151 ("A person who sustains actual damages may bring an action against another person *for those damages caused by the other person* . . . ."). The McClellands correctly assert that the wrongful refusal to pay an insured's claim "causes damages as a matter of law in at least the amount of the policy benefits wrongly withheld." *Vail v. Texas Farm Bureau Mut. Ins. Co.*, 754 S.W.2d 129, 136 (Tex. 1988). But, as noted above, there is no evidence in the record that would allow a reasonable jury to find that Chubb Lloyd's wrongfully withheld policy benefits here. Thus, there is no evidence that would allow a reasonable jury to find that Chubb Lloyd's caused actual damages to the McClellands.

Further, "Texas courts have clearly ruled that these extra-contractual tort claims require the same predicate for recovery as bad faith causes of action in Texas." *Higginbotham v. State Farm Mut. Auto Ins. Co.*, 103 F.3d 456, 460 (5th Cir. 1997) (citing *Emmert v. Progressive County Mutual Insurance Co.*, 882 S.W.2d 32, 36 (Tex. App.—Tyler 1994, writ denied)). In other words, if the bad-faith claim fails, the extra-contractual claims fail. Insurers are not faced with tort suits under Chapter 541 for challenging a claim of coverage if there was a reasonable basis for denial of that coverage. *Id.* [2] As noted above, no reasonable jury could look to the evidence presented here and determine that Chubb Lloyd's lacked a reasonable basis to decline the Truax estimate. Thus, the evidence presented here fails to raise a genuine issue of material fact as to the Chapter 541 claims. Accordingly, those claims will be dismissed.

### ii. Chapter 542

Chubb Lloyd's argues that it is entitled to summary judgment as to the Chapter 542 Prompt Payment Act claims "[b]ecause Plaintiffs have no evidence of the covered loss." Mot. 4. This is a confusing argument. Chubb Lloyd's own evidence establishes that there was a covered loss under the policy and that Chubb Lloyd's paid $213,527.37 pursuant to the policy for structure loss, slab removal, dwelling rebuild, board up expenses, and the destroyed contents of the apartment. *See* Mot. 4; *see also* Mot. Ex., 1 pp. App. 57-58. Conceivably, this could be construed as an argument that plaintiffs have no evidence to support their *measure* of the covered loss: either the $211,450.00 Truax estimate or the $349,402.55 actually spent. The Court addresses both possible arguments.

The Texas Insurance Code imposes an obligation to acknowledge receipt of the claim, commence an investigation of the claim, and request all items the insurer reasonably believes at the time will be required. TEX. INS. CODE § 542.055. Similarly, the Code imposes an obligation to

---

[2] Importantly, a wrongful rejection *can* trigger prompt payment liability under Chapter 542 of the Texas Insurance Code. *Higginbotham*, 103 F.3d at 461 (construing Tex. Ins. Code Art. 3.62, which was recodified as Chapter 542).

notify a claimant in writing of the acceptance or rejection of a claim no later than 15 days after the insurer receives those items. TEX. INS. CODE § 542.056. Insurers must notify the insured of any reason for delay, or of any reason for a rejection of the claim. *Id.* Insurers in violation of these provisions are liable, in addition to the amount of the claim, 18% annual interest on the claim plus reasonable attorney's fees. Tex. Ins. Co. § 542.060. To recover under the Prompt Payment Act, a party must establish three elements: (1) a claim under an insurance policy, (2) the insurer's liability for the claim, and (3) the insurer's failure to follow one or more sections of the statute with respect to the claim. *Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 518 (5th Cir. 2015) (quoting *GuideOne Lloyds Ins. Co. v. First Baptist Church of Bedford*, 268 S.W.3d 822, 830–31 (Tex. App.—Fort Worth 2008, no pet.)).

Chubb Lloyd's correctly suggests that "insurance agencies are required to pay . . . [Prompt Payment Act] damages only after having first been found liable for the claim." *Tremago, L.P. v. Euler-Hermes American Credit Indem. Co.*, 602 Fed. Appx. 981 (Tex. 2015) (quoting *Amine v. Liberty Lloyds of Tex. Ins. Co.*, No. 01–06–00396–CV, 2007 WL 2264477, at *5 (Tex. App.—Houston [1st Dist.] 2007, no pet.). However, evidence from both parties shows there was a claim under the policy and that Chubb Lloyd's was liable for—and paid—that claim. Chubb Lloyd's has not disputed its liability for the McClellands' claims under the policy. Rather, it has disputed the amount required to satisfy that liability. Similarly, the McClellands base their Chapter 542 claims on the assertion that the $213,527.23 that Chubb Lloyd's paid out under the policy was insufficient, but not that Chubb Lloyd's denied coverage altogether. *See* Pls.' Resp. 6 ("[A]dditional money is owed under the policy, money which has not bee [sic] paid by Defendant.").

Further, the McClellands have provided no evidence that Chubb Lloyd's failed to investigate or provide any written notice required by Chapter 542, or that Chubb Lloyd's delayed payment of

15

their claim. In contrast, Chubb Lloyd's presents evidence that shows a September 30, 2014 payment of $106,156.84 based on Chubb Lloyd's rebuild estimate. Mot. Ex. 1, p. App. 57. That payment was only 22 days after the McClellands submitted their claim. Additional payments for slab removal/replacement and replacement of the apartment contents were made in November 6, 2014, February 3, 2015, February 18, 2015, March 9, 2015, and August 12, 2015. There is no evidence as to how or why these payments were untimely or might otherwise violate Chapter 542, other than the McClelland's allegation that they were not enough. Accordingly, the Court construes plaintiffs' Chapter 542 claims as alleging prompt payment violations based on Chubb Lloyd's refusal to pay the Truax estimate or the actual expenses.

As noted above, there is no evidence presented here that would allow a reasonable jury to find that Chubb Lloyd's was liable for the additional benefits sought here. Therefore, to the extent that the McClellands assert Chapter 542 violations based on additional payments to which they claim to be entitled—payments for which this Court finds no evidence to support—those claims are dismissed. No reasonable jury could find that Chubb Lloyd's violated the Insurance Code in failing to pay claims with no evidentiary support. Accordingly, plaintiffs' motion for summary judgment as to the Chapter 542 claims is granted.

### c. DTPA Claims

Violations of the Insurance Code are also actionable under the DTPA's tie-in statute provisions. *See* TEX. BUS. & COMM. CODE § 17.50 ("A consumer may maintain an action where any of the following constitute a producing cause of economic damages or damages for mental anguish . . . the use or employment by any person of an act or practice in violation of Chapter 541, Insurance Code."). For the reasons articulated above, this Court finds that no reasonable jury could

find that Chubb Lloyd's violated Insurance Code Chapter 541. Thus, no reasonable jury could find that Chubb Lloyd's violated the DTPA. Accordingly, the DTPA claims will be dismissed.

## V.   CONCLUSION

In sum, a reasonable jury could not find that Chubb Lloyd's breached its contract with the McClellands based on the evidence presented here. Similarly, a reasonably jury could not find that Chubb Lloyd's breached the common law duty of good faith and fair dealing or violated either Texas Insurance Code Chapter 541 or Texas Insurance Code Chapter 542. Therefore, for the reasons stated above, the Court will grant defendant Chubb Lloyd's motion for summary judgment as to the contractual claims and the extra-contractual claims.

A separate order shall issue granting summary judgment.

Date: 1/30/17

_____
Royce C. Lamberth
United States District Judge