UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| KIRK MCCLELLAND and<br>TAMRE MCCLELLAND,<br><br>Plaintiffs,<br><br>v.<br><br>CHUBB LLOYD'S INSURANCE<br>COMPANY OF TEXAS, and<br>ROBERT LYNN PRITCHARD,<br><br>Defendants. | Case No: 5:16-cv-00108 |

## MEMORANDUM OPINION

### I. INTRODUCTION

This case is a dispute over insurance policy coverage and the conduct of the defendant insurer, Chubb Lloyd's Insurance Company of Texas (Chubb Lloyd's), in its payments totaling $145,290.72 to the plaintiff-insureds, Kirk and Tamre McClelland for a covered loss. The McClellands asserted that they were entitled to greater amounts and brought various causes of action against Chubb Lloyd's and claims adjuster Robert Pritchard, including breach of contract, violations of Sections 541 and 542 of the Texas Insurance Code, violations of the Texas Deceptive Trade Practices Act (DTPA), unfair insurance practices, and breach of the duty of good faith and fair dealing. This Court granted summary judgment and dismissed the case by order dated January 30, 2017. ECF No. 45.

Plaintiffs now move to alter that judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. Upon consideration of the motion, ECF No. 46, the defendant's response, ECF No. 47, and plaintiffs' reply, ECF No. 48, the Court finds that the motion should be denied.

1

## II. BACKGROUND

The facts of this case are set out in more detail in the Court's previous Memorandum Opinion dated January 30, 2017. ECF No. 44. To summarize, the McClelland's garage apartment at 502 Arcadia Place, San Antonio Texas was destroyed in a fire on September 8, 2014. The McClellands were policyholders of a Chubb Lloyd's "Texas Standard Homeowners Policy" covering that unit, as well as a "Texas Platinum Homeowner's Endorsement." Mot. Ex. 1 [ECF No. 37-1] pp. App. 1, 11, 32. Their extended policy limits allowed for "reconstruction cost even if this amount exceeds the limit of liability for your dwelling or other structures as shown on the declarations page." Mot Ex. 1 App. 46. The Platinum Endorsement defined "reconstruction cost":

> **"Reconstruction cost"** means the amount required at the time of loss to repair, replace, or rebuild, whichever is less, at the same location, your dwelling or other structure, using like design, and the quality of materials and workmanship which existed at the time of the loss.
>
> **"Reconstruction cost"** does not include any amount required for:
>
> a. the excavation, replacement or stabilization of land under or around your dwelling or any other structure;
>
> b. conforming to any law or ordinance that regulates the repair, replacement, rebuilding or demolition of your dwelling or any other structure; or
>
> c. removing the debris of a covered loss or the property that caused a covered loss.

Mot. Ex. 1 App. 47.

The McClellands' contractor, Truax Construction, submitted an estimate for the cost of repair at $211,450.00, excluding the cost of the slab, demolition, and haul-off. Chubb Lloyd's rejected that estimate in favor of their own estimate, $213,527.37, which *included* the cost of slab, removal, and the contents of the apartment. The cost of the rebuild itself was $106,156.84. Some payments were made to third-party contractors, but the McClelland directly received $145,290.72 towards the rebuild of the structure.

2

The McClellands spent $349,402.55 to rebuild the structure, increasing the size of the dwelling from 1,204 square feet to 1,584 square feet. The McClellands filed suit, claiming the failure to pay the full cost of reconstruction was a breach of the contractual terms of the policy. Further, the McClellands alleged that Chubb Lloyd's failure to pay the full amount constituted violations of various portions of the Texas Insurance Code and the DTPA.

Chubb Lloyd's removed the action on January 29, 2016. On September 30, 2016, this Court dismissed claims against defendant Pritchard, a claims adjuster for Chubb Lloyd's, on the basis that he was improperly joined. On January 30, 2017, this Court granted summary judgment as to both the contractual and extra-contractual claims against Chubb Lloyd's. Specifically, this Court found that a reasonable jury could not find that Chubb Lloyd's breached the contract based on the evidence in the record because the McClellands presented no evidence as to how much it would cost to rebuild a dwelling of <u>like design or quality</u>. Rather, they had presented evidence of what it cost to build a dwelling that was 30% larger than the one destroyed (1,204 square feet to 1,584 square feet). This Court found that the McClellands had therefore presented no evidence as to breach or to damages of the contractual claims. The Court dismissed those claims.

Similarly, the Court found that the lack of evidence as to the contractual claim was also a lack of evidence as to the extra-contractual claims because the extra-contractual claims were premised on Chubb Lloyd's failure to pay full cost of the rebuild. In other words, this Court found that the McClellands had offered no evidence that Chubb Lloyd's had wrongly refused to pay out the additional policy benefits. The Court also found there was no evidence that Chubb Lloyd's had failed to investigate or had delayed payments in violation of the Texas Insurance Code, Chapter 542. Therefore, there was no evidence to support the extra-contractual claims. The Court dismissed those claims as well.

3

On February 24, 2017, the McClellands filed a motion to amend or alter judgment subject to Rule 59(e), arguing that this Court erred in finding there was no evidence to support the allegation that Chubb Lloyd's failed to pay the full cost to rebuild a dwelling of like design or quality. The McClellands argue that Truax's estimate was, in fact, to rebuild the property as the property existed before the fire and that those estimates were based on the square footage calculations of Chubb Lloyd's construction expert, Grecco Consulting. Thus, according to the McClellands, they *did* offer evidence of the cost to rebuild using the same design, materials, and quality of workmanship. Defendant Chubb Lloyd's filed a response, arguing that none of the evidence attached to the McClelland's motion was previously unavailable during the summary judgment phase, and that this Court should not allow plaintiffs a second bite at the apple. Plaintiffs filed a reply, arguing that the deposition testimony was obtained after the summary judgment deadline.

## III. LEGAL STANDARD

The Federal Rules of Civil Procedure do not expressly allow for motions for reconsideration. However, Rule 59 of the Federal Rules of Civil Procedure allows a motion to alter or amend judgment within 28 days after the entry of judgment. Fed. R. Civ. P. 59(e). "A motion to alter or amend judgment must 'clearly establish either a manifest error of law or fact or must present newly discovered evidence. These motions cannot be used to raise arguments which could, and should, have been made before the judgment issued. Moreover, they cannot be used to argue a case under a new legal theory.'" *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005) (quoting *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990); *see also Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) ("A Rule 59(e) motion is discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law,

4

the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.") (internal quotations omitted). A court's decision to review a decision on a motion to alter or amend a judgment under Rule 59(e) is within its discretion, reversible only if the court's decision is based on an erroneous view of the law or an erroneous assessment of the evidence. *Ross*, 426 F.3d at 763.

In cases where a party submits after-acquired evidence that was not considered by the court in its summary judgment ruling, "two important judicial imperatives clash: the need to bring litigation to an end and the need to render just decisions on the basis of all the facts." *Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167, 174 (5th Cir. 1990), abrogated on other grounds by *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994). To strike a proper balance between these interests, a court should consider 1) the reasons for the moving party's default; 2) the importance of the omitted evidence to the moving party's case; 3) whether the evidence was available to the non-movant before it responded to the summary judgment motion; and 4) the likelihood that the non-moving party will suffer unfair prejudice if the case is reopened. *Id.*; *see also Templet v. HydroChem Inc.*, 367 F.3d 473, 482 (5th Cir. 2004).

## IV. ANALYSIS

Plaintiffs' argument is not complicated. The McClellands argue that this Court erred by not viewing the evidence in the light most favorable to the nonmovant, the McClellands. The McClellands also argue that this Court should re-open the case to consider "new testimony . . . that Truax's estimate was to rebuild the structure using like, [sic] kind or quality." Mot. 4, ECF No. 46. The Court will take the arguments in turn.

5

1. **This Court did view the record evidence in the light most favorable to the plaintiffs.**

At the summary judgment stage, the evidence before this Court was very limited. The record consisted of the policy, the Affidavit of Kirk McClelland, and Truax Construction's invoices. However, for the reasons articulated previously, that evidence established only that Truax estimated the cost based on the "standard replacement cost/construction cost" rates at $250.00 per square foot for conditioned space, $150.00 per square foot for unconditioned space, $50.00 per square foot of covered patio space, plus utilities and sprinkler controls. Pls.' Resp Ex. 2, ECF No. 38-2. There was no evidence as to how Truax's rates were set or whether they represented the costs to rebuild structures of like quality or kind to the McClellands' insured property. A reasonable jury could not look to the "standard rates" applied by Truax and infer that the cost to build a dwelling of like kind or quality to the McClellands' property was $211,450.00. If so, based on Truax's standard rates, all dwellings consisting of 456 square feet of conditioned space, 556 square feet of unconditioned space, and 196 square feet of covered patio space cost the same to rebuild. In such a world, all one-page estimates based on conclusory standard rates per square foot would be sufficient to bring any insurance claim to a jury trial. That cannot be.

The Court properly determined that the Truax estimate did not raise a genuine issue of material fact as to the cost to rebuild a dwelling of like kind or quality to the one that previously existed. Similarly, the invoiced costs of what was spent could not raise a fact issue as to the costs of building a dwelling of like kind or quality because the dwelling that was build was *not* of like kind or quality: it was 30% larger than the property that preceded it. Kirk McClelland's affidavit testimony that the difference in size did not account for the difference in price was conclusory and insufficient to raise a fact question here.

Based on the record, no reasonable jury could find that Chubb Lloyd's had breached its duties under the policy.

2. **The *Lavespere* factors cited by plaintiffs do not favor re-opening the case here.**

This Court noted in its Memorandum Opinion dated January 30, 2017 that "plaintiffs have not submitted any testimony from Truax that he considered the design and quality of the dwelling at the time of loss, or that the estimate was intended to replace the dwelling as it existed at the time of loss." Mem. Op. 10, ECF No. 44. In apparent response to this observation, plaintiffs' Rule 59 motion includes attached deposition testimony from Kirk McClelland and Jeff Truax taken on November 11, 2016. ECF Nos. 46-1, 46-2. Both testified as to their disagreement with the line-item accounting upon which defendants' estimate was based. McClelland testified that several items on Chubb Lloyd's estimate submitted by Grecco Consulting were incorrect. For example, the Grecco estimate listed aluminum windows while the McClellands' had much more expensive Pella windows. Truax testified that he had first-hand knowledge of the specific residence at issue. He also testified that he set his rate at $250.00 per square foot because he "know[s] what stuff costs to build." *Id.* at App. 24. However, Truax also testified that the new dwelling would be superior to the original because the original building "was not to code and couldn't be rebuilt like it was." *Id.* at App. 27. The estimate he prepared was based on what he "thought approximately it would cost per square foot based on what [they] usually do." *Id.* at App. 22.

Plaintiffs also ask this Court to consider deposition testimony from Chubb Lloyd's claims adjuster Richard Pritchard, a former defendant in this case. In that deposition testimony, plaintiffs' counsel discussed Pritchard's handling of the conflicting contractor estimates. This testimony also focused on the fact that defendants' estimate included low-grade aluminum windows instead of Pella wood windows, which were substantially more expensive to replace. *Id.* at App. 64-70.

7

In considering whether to reconsider a case based on newly available evidence, a Court should consider 1) the reasons for the moving party's default; 2) the importance of the omitted evidence to the moving party's case; 3) whether the evidence was available to the non-movant before it responded to the summary judgment motion; and 4) the likelihood that the non-moving party will suffer unfair prejudice if the case is reopened. *Lavespere*, 910 F.2d at 174.

The first, third, and fourth factor all cut in favor of denying plaintiffs' motion. First, there is little justification for the moving party's default here. Plaintiffs argue that they had requested an extension of the summary judgment deadline, ECF No. 36, in order to take the depositions here. But that motion requested a one-month extension through December 2, 2016, rather than the current deadlines in November. The Truax and McClelland depositions here were conducted November 11, 2016, and the testimony was therefore available prior to the plaintiffs' response deadline of November 15, 2016. The Pritchard deposition was conducted in January 2017, and therefore would not have been available even *if* this Court granted the extension to December 2017. There is therefore no reason why the Court's failure to extend the summary judgment deadlines to December 2016 resulted in plaintiffs' default here.

Similarly, the McClelland and Truax depositions were conducted prior to the response deadline at the summary judgment stage. The evidence was therefore *available* to the non-movants before they responded to the summary judgment motion. While the deposition transcripts may have been produced after the deadline, plaintiffs could have prepared more detailed affidavit testimony for McClelland and could have submitted affidavit testimony for Truax. Additionally, plaintiffs could have sought leave from this Court to extend the response deadlines in light of imminent deposition testimony from key witnesses here. They did not.

Also, the deposition of Robert Pritchard could have, and should have, been conducted during discovery prior to summary judgment. Instead, they took place in January 2017, more than two months after the summary judgment filings. Further, these were not previously unknown witnesses. Instead, they were both witnesses known to the McClellands and plaintiffs' counsel well before summary judgment proceedings began. The plaintiffs neither gave notice to the Court that relevant depositions were pending, nor did they request leave to file additional evidence. In short, the evidence that now accompanies plaintiffs' Rule 59(e) motion is not newly available. It was available before the non-movants responded to summary judgment, and plaintiffs should have submitted this evidence then.

Third, the Court finds that defendant here, Chubb Lloyd's, would suffer unfair prejudice if this Court were to re-open the case. The parties both conducted discovery pursuant to this Court's previous scheduling order. Defendant filed a motion for summary judgment. Plaintiff did not file their own summary judgment motion, and responded to defendant's motion with extremely limited evidence. The Court will not open the case and give plaintiffs a second bite at the apple here. They had their opportunity to defeat defendant's motion, and they failed.

## V.   CONCLUSION

In sum, plaintiffs have not presented any intervening change in the law that dictates a different result on the previously granted motion for summary judgment. This Court viewed the record before it in the light most favorable to the plaintiffs. However, that record was so scant as to require dismissal. Further, plaintiffs do not now offer previously unavailable evidence as to the alleged breach of contract or the extra-contractual claims. Rather, they offer additional evidence that they knew, or should have known, existed prior to filing their summary judgment response. While the now-offered evidence may have been helpful at the summary judgment stage, the Court

finds that the time to consider summary judgment evidence has long since passed. The Court will therefore deny the Rule 59(e) motion to alter or amend judgment.

A separate order shall issue.

Date: 9/6/17

Royce C. Lamberth
United States District Judge